## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TARIQ WYATT,** | : | **Civil No. 3:16-CV-1438** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **C.O. MALISKO, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## <u>MEMORANDUM AND ORDER</u>

### I.   <u>Factual Background</u>

This case is currently scheduled for a non-jury trial before the undersigned relating to the plaintiff's sole surviving claim, a First Amendment retaliation claim based on the alleged denial of access to legal papers and placement in an unsanitary psychiatric observation cell. The remaining Defendant, Lt. Butts of the Department of Corrections ("Department" or "DOC"), has filed a motion *in limine*, which seeks a pre-trial determination by the Court that the plaintiff failed to properly exhaust his retaliation claim, or in the alternative, seeks to bar Wyatt from seeking damages other than nominal damages. (Doc. 118). Both of these arguments by the defense are premised upon what they regard as flawed and incomplete efforts by Wyatt to exhaust his administrative grievances, or seek damages in the grievances that he

submitted to prison officials. As the defendants view it, Wyatt's pathway to grieve these matters was through the three-tier system prescribed by DC-ADM 804, and his failure to fully and properly exhaust grievances through this process is now fatal and bars this retaliation claim.

The plaintiff has responded to this motion, (Doc. 123), with a twofold rejoinder arguing: first, that Wyatt properly exhausted his grievances by reporting allegations of inmate abuse pursuant to a separate prison policy DC-ADM 001; and, second, by contending that the plaintiff's efforts to exhaust his grievances were obstructed by staff. Citing these legal and factual disputes, Wyatt contends that these issues of exhaustion and damages should be deferred until trial when the court may make fully informed decisions based upon a complete factual record.

In our view, the need for a pre-trial ruling on a motion *in limine* is reduced here, where we will be conducting a non-jury trial. This fact reduces the urgency and necessity of pre-trial evidentiary rulings like those sought here since:

> [A]ny concern about juror confusion is obviated, and the Court is well-positioned to make judgments regarding the admissibility of evidence within the context of the trial itself. Indeed, although courts will rule on motions in limine in advance of bench trials in appropriate cases, Velez v. Reading Health System, 2016 WL 9776079 (E.D. Pa. Feb. 24, 2016), they often will find it unnecessary to do so because the concerns over prejudice or confusion to a jury are absent. See 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure Civil 3d § 2411 (3d ed. 2008); see also United States v. Brown, 2017 WL 219521 (N.D. Ill. Jan. 19, 2017) (noting that concerns over the potential for prejudice from improper evidence "are minimal in bench trials ... rulings on motions in limine are less important."); Alan L. Frank Law

Assocs., P.C. v. OOO RM Invest, 2016 WL 9348064 (S.D. Fla. Nov. 30, 2016).

Buhler Versatile Inc. v. GVM, Inc., No. 1:17-CV-00217, 2018 WL 6062307, at *5 (M.D. Pa. Nov. 20, 2018). Therefore, we will decline the invitation to make pre-trial rulings on these disputed exhaustion issues and will instead defer rulings upon these administrative exhaustion issues pending the full factual development of the record at trial.

## II.   **Discussion**

The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial. See Luce v. United States, 469 U.S. 38, 41 n.4 (1984); In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238, 260 (3d Cir. 1983), rev'd on other grounds sub nom., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) (the court exercises its discretion to rule *in limine* on evidentiary issues "in appropriate cases"). Courts may exercise this discretion in order to exclude unfairly prejudicial, confusing, cumulative, or irrelevant evidence. United States v. Romano, 849 F.2d 812, 815 (3d Cir. 1988). Courts may also do so in order to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted). However, courts should be careful before doing so.

3

In this case, it is alleged that the plaintiff has failed to exhaust his administrative remedies within the prison system prior to filing this complaint. The failure to timely and fully pursue these administrative remedies has substantive significance for inmate-litigants like Wyatt since the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Section 1997e's exhaustion requirement applies to a wide-range of inmate complaints, including damages complaints like those made here. See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000). While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts. This rigorous enforcement is mandated by a fundamental recognition that section 1997e's exhaustion requirement promotes important public policies. Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000) (citations omitted).

Because of the substantial policies fostered by this exhaustion requirement, it has been held that there is no futility exception to section 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court. When assessing an exhaustion claim, it is important to note that the exhaustion

requirement of the PLRA is one of "proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 84 (2006). Failure to comply with the procedural requirements of the available grievance system will result in a claim being deemed procedurally defaulted. Nyhuis v. Reno, 204 F.3d 65, 90 (3d Cir. 2000); Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004).

This broad rule favoring full exhaustion admits of a number of exceptions, however. For example, if the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). Likewise, an inmate may only exhaust those remedies that are available to him. As we have observed:

> [A]n inmate's failure to exhaust will only be excused "under certain limited circumstances." Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005). In Ross [v. Blake], the Supreme Court of the United States articulated three circumstances where a prison's administrative procedures are "unavailable" to inmates. Specifically, the Supreme Court noted that administrative remedies are not available where: 1) the administrative procedure operates "as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; 2) the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and 3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 136 S. Ct. at 1859-60 (citing Booth v. Churner, 532 U.S. 731, 738, 741 n.6 (2001)). As to the second circumstance, the Supreme Court instructed that "[w]hen rules are so confusing that no reasonable prisoner can use them, then they are no longer available." Ross, 136 S. Ct. at 1860 (quotation omitted). The Supreme Court further noted that "Congress has determined that the inmate should err on the side of exhaustion"

where "an administrative process is susceptible of multiple reasonable interpretations," however, where a remedy becomes "essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands — then it is also unavailable." Id.; see also Brown v. Croak, 312 F.3d 109, 110 (3d Cir. 2002) (holding that prisoner with failure to protect claim was entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000) (holding that exhaustion requirement was met where Office of Professional Responsibility fully examined merits of excessive force claim and correctional officers impeded filing of grievance).

Landau v. Lamas, No. 3:15-CV-1327, 2018 WL 8950127, at *6 (M.D. Pa. Oct. 11, 2018), report and recommendation adopted, No. 3:15-CV-1327, 2019 WL 3502627 (M.D. Pa. Aug. 1, 2019).

"Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff." Small v. Camden Cnty., 728 F.3d 265, 268-69 (3d Cir. 2013). In accordance with the PLRA, in order to prevail on this affirmative defense, a defendant must show that the prisoner failed to comply with exhaustion requirements with respect to any claim that arises in the prison setting, regardless of the type of claim asserted, or the relief sought.  See Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"); Booth, 532 U.S. at 741 n.6 ("[A]n inmate must exhaust

irrespective of the forms of relief sought and offered through administrative avenues").

Whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court even if that determination requires the resolution of disputed facts. See Small, 728 F.3d at 271 (judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury); see also Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010). Where this process entails fact-finding and resolution of factual disputes, the court may resolve the issue of exhaustion at trial through an evidentiary hearing. As the Court of Appeals has observed:

> [J]ust as subject-matter jurisdiction, personal jurisdiction, and venue, exhaustion is a "threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time." Dillon, 596 F.3d at 272 (emphasis added); see Pavey, 544 F.3d at 741 ("Juries decide cases, not issues of judicial traffic control. Until the issue of exhaustion is resolved, the court cannot know whether it is to decide the case or the prison authorities are to."); cf. McCarthy v. Madigan, 503 U.S. 140, 144, 112 S. Ct. 1081, 117 L.Ed.2d 291 (1992) (likening the doctrine of exhaustion of administrative remedies to "abstention, finality, and ripeness-that govern the timing of federal-court decisionmaking"); Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51 n. 9, 58 S. Ct. 459, 82 L. Ed. 638 (1938) (describing exhaustion as a "rule of judicial administration"). . . . . [I]t is of no consequence that here, as is often the case, there are disputed facts that must be resolved in order to determine whether the claims were exhausted. See Bryant, 530 F.3d at 1373–74 (holding the district court properly acted as fact finder in resolving conflicting evidence that

> raised a genuine issue of material fact about whether administrative
> remedies were available to the prisoner plaintiffs); <u>accord</u> <u>Messa</u>, 652
> F.3d at 309; <u>Dillon</u>, 596 F.3d at 271. Matters of judicial administration
> often require judges to decide factual disputes and the Seventh
> Amendment is not implicated as long as the facts are not bound up with
> the merits of the underlying dispute.

<u>Small</u>, 728 F.3d at 269-70.

In the instant case, the parties' pleadings reflect both factual disagreements regarding whether the grievance process was actually available to Wyatt, as well as legal disputes concerning whether Wyatt's submission of an abuse complaint under Corrections policy DC-ADM 001 satisfied this exhaustion requirement. With respect to this legal issue regarding the interplay of the general prison grievance policy, DC-ADM 804, and the inmate abuse reporting policy, DC-ADM 001:

> [T]he legal significance of these parallel grievance paths has been
> thoroughly discussed and, "while the court of appeals 'has not
> considered whether a Pennsylvania prisoner can exhaust his
> administrative remedies through DC–ADM 001, nor what steps would
> be necessary under that procedure,' <u>Victor v. Lawler</u>, 565 Fed.Appx.
> 126, 129 (3d Cir. 2014), a number of district courts 'have found that
> allegations of abuse do not have to be filed through all three levels of
> the DOC's grievance system pursuant to DC-ADM 804, if the inmate
> reports the abuse pursuant to DC-ADM 001.' <u>Boyer v. Malet</u>, No.
> 3:CV-16-0149, 2016 WL 4679013, at *3 (M.D. Pa. Sept. 7,
> 2016)." <u>Robinson v. Tennis</u>, No. 3:11-CV-1724, 2017 WL 4479349, at
> *6 (M.D. Pa. Sept. 8, 2017), <u>report and recommendation adopted,</u> No.
> 3:11-CV-1724, 2017 WL 4478009 (M.D. Pa. Oct. 6, 2017).

<u>Landau v. Lamas</u>, No. 3:15-CV-1327, 2018 WL 8950127, at *7 (M.D. Pa. Oct. 11, 2018), <u>report and recommendation adopted,</u> No. 3:15-CV-1327, 2019 WL 3502627

(M.D. Pa. Aug. 1, 2019). Yet, while come courts have addressed this legal issue, at least in part, we need not make a conclusive determination on these exhaustion questions at this time. Given these legal and factual disputes, and recognizing the non-jury nature of these proceedings, while we acknowledge that the issues of PLRA exhaustion must be resolved by the court, we will defer ruling upon these questions until after trial when we may consider these exhaustion issues on a fully developed factual record.

An appropriate order follows.

_S/ Martin C.  Carlson_
Martin C. Carlson
United States Magistrate Judge

DATED: June 15, 2021

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TARIQ WYATT, | : | Civil No. 3:16-CV-1438 |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | **(Magistrate Judge Carlson)** |
| | : | |
| C.O. MALISKO, et al., | : | |
| | : | |
| **Defendants.** | : | |

## O R D E R

AND NOW, this 15th day of June 2021, in accordance with the accompanying Memorandum, upon consideration of the defendant's motion *in limine* (Doc. 118), which seeks which seeks a determination by the Court that the plaintiff failed to properly exhaust his retaliation claim, or in the alternative, seeks to bar Wyatt from seeking damages other than nominal damages, IT IS ORDERED that the motion for a pre-trial ruling on these issues is DENIED. While we acknowledge that the issues of PLRA exhaustion must be resolved by the court, we will defer ruling upon this question until after trial when we may consider these exhaustion issues on a fully developed factual record.

*S/ Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge